UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

InCompass IT, Inc.,                                           Civ. No. 11-570 (PAM/TNL)

                 Plaintiff,

v.                                               **MEMORANDUM AND ORDER**

XO Communications Services, Inc.,
and XO Communications, LLC,

                 Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss or, alternatively, to Transfer Venue. For the reasons that follow, the Motion to Dismiss is denied, and the Motion to Transfer is granted.

**BACKGROUND**

Plaintiff InCompass IT, Inc. provides information technology services to its customers. These services include managing and monitoring computer servers and other IT infrastructure and providing applications and desktop services. (Am. Compl. ¶ 1.) In 2002, InCompass contracted with Defendant XO Communications Services[1] to provide "collocation" services for InCompass's routers, firewalls, and servers. (Id. ¶ 10.) In this

---

[1] The Amended Complaint does not elucidate the relationship between XO Communications Services and Defendant XO Communications, LLC, but merely states that "XO Communications, LLC, is a wholly-owned subsidiary of its only member, XO Holdings, Inc." (Am. Comp. ¶ 3.) There are no allegations in the Amended Complaint specifically against XO Communications, LLC.

case, collocation means that InCompass's servers and other hardware were physically located on the premises of XO, in locked cabinets.[2] InCompass alleges that XO allowed InCompass's equipment to fail 24 times from 2002 to the present, damaging InCompass and causing it to lose customers. (Id. ¶ 13.)

The companies entered into at least five agreements between 2002 and the present. The Amended Complaint does not specify which of the agreements are at issue in its claim for breach of contract. All of the agreements contained some version of a forum-selection clause. Three of the agreements contained mandatory clauses; in the other two, the forum-selection language was permissive, rather than mandatory.

The Agreement on which InCompass relies in its submissions in opposition to the Motion contains the following forum-selection clause:

> This Agreement shall be governed by and construed under the laws of the Commonwealth of Virginia. Venue for any action between the Parties shall be in the State Courts in Fairfax County, Virginia, or the Federal District Court for the Eastern District of Virginia, and Customer agrees to accept exclusive personal jurisdiction of such courts.

(2002 Collocation License Agreement ¶ 21.C (Stanbury Aff. Ex. 3).) The parties executed two other agreements, called Service Order Agreements, in 2002 and 2003. These agreements incorporated a so-called Evergreen Agreement. The Evergreen Agreement was signed separately by the parties and provided that:

> This Agreement shall be governed by the substantive law of the

---

[2] It appears as though XO provided these collocation services at a location on Washington Avenue in Minneapolis.

> Commonwealth of Virginia without reference to its principles of conflicts of laws, and Customer consents to the jurisdiction and venue of the Federal District Court for the Eastern District of Virginia or the State courts in Fairfax County, Virginia.

(2002 Service Order Agreement at Evergreen Agreement ¶ N (Martin Aff. Ex. 1 at 14).)

In 2007 and 2009, the companies executed two additional Service Order Agreements. The forum-selection clause in these agreements was set forth in the "XO Service Order Terms" rather than in an attached separate agreement. The clause in these agreements provided:

> This Agreement shall be governed by the substantive law of the Commonwealth of Virginia without reference to its principles of conflicts of laws. Customer consents to the exclusive jurisdiction and venue of the Federal District Court for the Eastern District of Virginia or the State courts in Fairfax County, Virginia.

(2007 Service Order Agreement at XO Service Order Terms ¶ L (Martin Aff. Ex. 3 at 4).)

In addition to the arguments regarding improper venue or transfer, Defendants ask for dismissal of the second count of the Amended Complaint, for tortious interference with existing and prospective economic relations. (The first count claims breach of contract.) Plaintiff does not oppose the dismissal of the tortious interference count, admitting that the record as it now stands does not support this theory of recovery. Thus, Count II of the Complaint will be dismissed.

**DISCUSSION**

XO asks first for a dismissal of the action without prejudice under 28 U.S.C. § 1406, contending that the agreements' forum-selection clauses render this an improper venue for the litigation. Failing that, XO contends that forum non conveniens principles dictate a transfer to Virginia.

**A.     Improper Venue**

XO argues that the relevant forum-selection clauses mandate that any litigation between the parties be venued in Virginia, making Minnesota an improper venue and requiring dismissal of this action under 28 U.S.C. § 1406.  Venue is appropriate in this diversity action in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).   Under this definition of venue, it is clear that venue is proper in Minnesota, because the events giving rise to InCompass's claims occurred here and because XO does business here and is therefore subject to this Court's in personam jurisdiction.

XO urges the Court to determine that a mandatory forum-selection clause trumps this definition of venue, requiring the dismissal of the action as contemplated by § 1406. But the Supreme Court has held otherwise.  In <u>Stewart Organization, Inc. v Ricoh Corporation</u>, 487 U.S. 22 (1988), the Court determined that a federal court sitting in diversity jurisdiction

should treat a request to enforce a forum-selection clause as a motion to transfer venue under 28 U.S.C. § 1404(a). In that case, a federal court applying a mandatory forum-selection clause had determined that state law, which looked with disfavor on such clauses, required the denial of a motion to dismiss or transfer. The Supreme Court disagreed, holding that "the first question for consideration should have been whether § 1404(a) itself controls [defendant's] request to give effect to the parties' contractual choice of venue and transfer this case . . . ." Id. at 29.[3] Thus, the Court "explicitly repudiated" the approach of dismissing mandatory-forum-selection-clause cases for improper venue under § 1406. Charles A. Wright, et al., 14D Federal Practice & Procedure § 3803.1 (3d ed.); see also Steward v. Up North Plastics, Inc., 177 F. Supp. 2d 953, 957-58 (D. Minn. 2001) (Tunheim, J.) (discussing "growing majority" of post-Stewart cases holding that, in a properly venued action, dismissal because of forum-selection clause under § 1406 is "procedurally improper").[4]

Neither party mentions this aspect of Stewart. But the impact of Stewart's holding on XO's Motion to Dismiss is clear. That Motion must be denied, and the merits of transfer

---

[3] The Court also noted in passing that the lower court properly denied a motion to dismiss the case for improper venue, because the venue met the requirements of § 1391. Id. at 29 n.8. It bears repeating that the forum-selection clause at issue in Stewart was a mandatory clause. See id. at 24 n.1 (quoting forum-selection clause).

[4] Some courts have held that a motion to dismiss under § 1406 is appropriate where a mandatory forum-selection clause selects a state court forum. See, e.g., Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990) (finding that Stewart's reasoning regarding § 1404(a) did not apply "where, as here, a party seeks to have an action dismissed or remanded to state court, rather than transferred, on the basis of a forum selection clause that purports to preclude litigation from a venue other than a specific state court"). The clauses at issue here allow litigation in either the federal or state courts of Virginia.

determined under § 1404(a).

**B.      Section 1404 Transfer**

Although a dismissal is not warranted, the case will be transferred under 28 U.S.C. § 1404(a). That section provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute mandates three factors for a court to consider when determining whether transfer is appropriate: (1) the convenience of parties; (2) the convenience of witnesses; and (3) the interests of justice. Id. However, a court is not limited to considering only these three factors, because transfer determinations "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

"In general, federal courts give considerable deference to a plaintiff's choice of forum . . . ." Id. at 695. Thus, the party seeking a transfer bears the burden to establish that a change of forum is appropriate. Id. However, "[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the [] court's calculus." Stewart Org, 487 U.S. at 29. "[W]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995).

As an initial matter, InCompass contends that the Court should give deference to its choice of forum and should not take into account the forum-selection clauses. According to

InCompass, the forum-selection clauses are unenforceable because they are illusory, or because XO waived the applicability of the clauses. InCompass also contends that because some of the clauses are permissive rather than mandatory, the Court should afford less deference to the parties' contractual forum choice.

1. <u>Illusory Contract</u>

First, InCompass contends that, because XO retained the ability to unilaterally modify the terms of its agreements, the forum-selection clauses are illusory. XO's online terms and conditions provide that XO may modify the company's "general terms and conditions, [or] the supplemental product terms and conditions . . . at any time as permitted or required by law." (XO Communications Services, Inc., General Terms and Conditions, Agreement Components (Stanbury Aff. Ex. 4 at 1).) However, this paragraph also provides that XO will provide a customer with at least 15 days' prior notice of "any changes that would materially and adversely affect customer." (<u>Id.</u>)

InCompass does not contend that XO ever attempted to change the terms of the forum-selection clauses, either with or without notifying InCompass, and thus its argument that the clauses are illusory is mystifying. Moreover, the caselaw on which InCompass relies interprets arbitration agreements, where the right to unilaterally alter the agreement is often held to make such agreements illusory. There is no arbitration agreement here, and neither party is giving up its right to pursue judicial remedies. See <u>M.B. Restaurants, Inc. v. CKE Restaurants, Inc.</u>, 183 F.3d 750, 752 (8th Cir. 1999) (forum-selection clauses "are enforceable unless they would actually deprive the opposing party of his fair day in court").

7

The clause at issue is a fairly straightforward forum-selection clause; concerns about unilateral power that pertain to arbitration agreements are not present here. Moreover, there is no unilateral power to change contract terms in any event, because the agreement specifies that XO will give InCompass notice of any changes and InCompass can cancel the agreement if it does not agree with the changes. InCompass's contentions are simply incorrect.

InCompass's argument about illusory obligations amounts to a challenge to the forum-selection clauses as contracts of adhesion. InCompass apparently believes that because XO wrote the contract and presented it to InCompass, the contract terms are voidable as a contract of adhesion. But both parties here are sophisticated commercial entities that are presumed to enter into contracts knowingly and intelligently. See M/S Bremen v. Zapata Off-Shore Co., 401 U.S. 1, 15 (1972) (holding that forum-selection clauses between commercial parties are prima facie valid and enforceable). XO did not attempt to hide the forum-selection language; indeed, in some of the contracts, that language appears on the same page as the InCompass representative's signature. If InCompass did not want to litigate in a foreign forum, it should have negotiated a different contract. It did not do so and its arguments about the enforceability of the forum-selection clause are without merit.

    2.    Waiver

InCompass contends that XO waived its argument as to the appropriate forum by failing to exercise its rights under the forum-selection clauses. InCompass is also suing XO in Minnesota state court, alleging conversion and unjust enrichment. XO has defended the state-court lawsuit without raising the forum-selection-clause issue.

XO points out that all of the agreements the parties signed contain a no-waiver clause, either providing that any failure to exercise a right under the agreement shall not be construed as a waiver of such right, or providing that any waiver of the agreements' provisions must be in writing signed by the waiving party to be binding. (XO Communications Services, Inc., General Terms and Conditions ¶ 33.7 (Stanbury Aff. Ex. 4 at 19).)

None of the cases either party cites are particularly helpful on this issue. The cases involve parties who, within the same litigation, either explicitly or implicitly waive portions of the contract at issue. That is not the case here. But even if XO's failure to raise the forum-selection clause in the state court case could be construed as a waiver in this case, the Court may still consider whether a transfer of this matter is appropriate under § 1404(a). Steward, 177 F. Supp. 2d at 958-59.

### 3. Mandatory or Permissive

Finally, InCompass argues that no deference is due the forum-selection clauses here because the not all of the clauses are mandatory. However, in its opposition papers, InCompass relies solely on the 2002 Collocation License Agreement, which has a mandatory forum-selection clause. Moreover, the most recent agreement contains a mandatory forum-selection clauses and also provides that the agreement "supersedes all prior agreements and understandings, whether written or oral . . . , existing between the parties as of the date of this [agreement]." (2009 Service Order Agreement at XO Service Order Terms ¶ J (Martin Aff. Ex. 4 at 4).) Because the majority of the parties' agreements, including the most recent agreement as well as the agreement on which InCompass relies, contain mandatory forum-

selection clauses, the forum-selection clauses must "figure[] centrally in the [C]ourt's calculus" under § 1404(a).  Stewart, 487 U.S. at 29.

    4.    <u>Convenience of Parties and Witnesses</u>

InCompass argues that the convenience of the parties and witnesses weigh against transfer. But InCompass agreed to litigate in Virginia; it cannot now complain that Virginia is an inconvenient forum.

> Whatever 'inconvenience' [Plaintiff] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting. In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

M/S Bremen, 407 U.S. at 17-18; see also Jumara, 55 F.3d at 880 ("[A] forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum."). The convenience of the parties thus favors a transfer.

InCompass argues that all of the witnesses likely to testify at trial reside in Minnesota. Although XO disagrees with this contention, claiming that some employees at XO's headquarters in Virginia may be called as witnesses, the Court will presume for the purposes of this analysis that the majority of the witnesses are Minnesota residents. Thus, the convenience of witnesses weighs against transfer.

    5.    <u>Interests of Justice</u>

The last factor, the interests of justice, likewise requires consideration of the forum-

selection clause. Nearly all of the interests-of-justice factors the Eighth Circuit has outlined either are not relevant or weigh in favor of transfer. See Terra Int'l, 119 F.3d at 696 (listing seven non-exhaustive considerations when determining interests of justice). Factors such as the ability to enforce a judgment or obstacles to a fair trial are not relevant here, and as discussed above, the choice-of-forum factor must be evaluated in light of the forum-selection clause. Finally, the advantages of having a Virginia court determine questions of Virginia law are obvious, and despite this Court's ability to make that determination, this factor and the conflict of laws factor weigh in favor of transfer.

In short, both the convenience of the parties and the interests of justice weigh in favor of the transfer XO seeks. The Motion to Transfer is therefore granted.

**CONCLUSION**

Because this case is properly venued in Minnesota, the Motion to Dismiss under 28 U.S.C. § 1406 is denied. InCompass concedes, however, that dismissal of Count II is appropriate. Finally, XO has succeeded in establishing that a transfer is appropriate under 28 U.S.C. § 1404(a). Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendants' Motion to Dismiss or Transfer Venue (Docket No. 7) is **GRANTED in part** and **DENIED in part**;

2. Count II of the Amended Complaint is **DISMISSED**; and

3. This matter is **TRANSFERRED** to the United States District Court for the Eastern District of Virginia.

Dated:  May 24, 2011 

                                             s/Paul A. Magnuson 
                                            Paul A. Magnuson
                                            United States District Court Judge